## Richmond

### PHILIP P. NELSON v. ELEANOR H. PENDLETON.

August 30, 1973.

Record No. 8184.

Present, All the Justices.

*Henry H. Whiting (Kuykendall, Hall & Whiting, on brief), for plaintiff in error.*

*Thomas V. Monahan (Hall, Monahan, Engle, Mahan & Mitchell, on brief), for defendant in error.*

Per Curiam.

The question for decision in this negligence case is whether the "rescue doctrine" is available to the plaintiff, Eleanor H. Pendleton, to support a recovery of damages for personal injuries sustained when she fell down the basement stairs in the home of the defendant, Philip P. Nelson. The jury returned a verdict in Mrs. Pendleton's favor in the sum of $20,000, and final judgment was entered thereon. Nelson appeals.

The evidence shows that Nelson and his wife resided at Warrenton, in Fauquier County. Their three grandchildren, a girl four years of age and twins, a girl and a boy, two years of age, lived with them.

In the early part of 1970, the Nelsons planned a vacation trip. To care for their grandchildren, they employed Mrs. Pendleton, with whom they were acquainted, to stay in their home in their absence.

On the day before their departure, the Nelsons were visited by Mrs. Pendleton, at which time Mrs. Nelson reviewed Mrs. Pendleton's duties and showed her the physical layout of the home.

During her visit, Mrs. Pendleton was taken to the basement, which was reached through a door in the kitchen opening onto a stairway. Mrs. Nelson called to Mrs. Pendleton's attention the presence of hook and eye latches installed on both the kitchen and basement sides of the door, located above the children's reach. Mrs. Pendleton was told that the door was to be kept "fastened at all times." Mrs. Pendleton acknowledged on the witness stand that she knew the latches were "for the protection of the children" and that it was her obligation to "be sure" the door was latched.

The Nelsons departed on their trip at 7:00 a.m. on the morning of February 3, 1970. Before leaving, Nelson went to the basement. When testifying as a witness for Mrs. Pendleton, he was unable to "recollect" whether, upon emerging from the basement, he had fastened the latch on the kitchen side of the door.

Mrs. Pendleton arrived at the Nelson house at 8:00 a.m., following the Nelsons' departure, to take over care of the children from a maid who had arrived earlier. The four-year-old girl, Debby, was sent to school at 9:00 a.m., after which Mrs. Pendleton proceeded to become acquainted with the twins, Sandy and William.

Mrs. Pendleton gave the children their lunch at approximately 11:30 a.m. About noon, while she was cleaning up the kitchen, she heard Sandy call to her from the basement stairs. She rushed to the open basement door, saw the child standing on the second or third step down, and went to her. The little girl grabbed Mrs. Pendleton as if to hug her, and they lost their balance and fell to the concrete floor below. Both were injured.

Mrs. Pendleton testified that she had intended to check the basement door to make sure it was latched, but had not done so before the fall occurred. She explained her failure by saying "there wasn't sufficient time."

It is Mrs. Pendleton's theory, which the trial court adopted, that Nelson, having installed the latches on the basement door, had established the standard of care by which his conduct was to be measured, and he was therefore negligent in failing to latch the door on the morning of the accident. Because of this negligence, Mrs. Pendleton says, the child Sandy was placed in a position of peril which "cried

for rescue," and Nelson was rendered liable when she, Mrs. Pendleton, was injured in attempting to effectuate the rescue.

We will assume, without deciding, that Mrs. Pendleton is correct in her contention that Nelson was negligent in failing to latch the door on the morning of the accident. We will further assume, without deciding, that such negligence contributed to cause the child Sandy to be placed in a position of peril which "cried for rescue." But it does not follow that Mrs. Pendleton is entitled to recover from Nelson for her injuries. The fatal defect in Mrs. Pendleton's theory stems from the rule that if a situation of peril in which a victim is found is due in part to the rescuer's prior negligence, such negligence is a contributing cause of the injuries sustained by the rescuer. Therefore, there can be no recovery by the rescuer against a defendant whose negligence may also have contributed to such injuries. *Restatement (Second) of Torts* § 472, comment *a* at 522 (1965).

Here, the evidence is clear that Mrs. Pendleton was negligent in failing to discharge the affirmative duty imposed upon and accepted by her to "be sure" that the basement door was kept "fastened at all times." While she complained of insufficient time to discharge that duty, she had been in the house for four hours before the accident occurred and had admittedly passed by the door a number of times, so her failure cannot be excused. Therefore, the situation of peril in which the child Sandy was found was due in part to the prior negligence of Mrs. Pendleton.

These are matters about which reasonable men should not differ, and the trial court should have ruled that the rescue doctrine was not available to Mrs. Pendleton to support a recovery against Nelson. Without the availability of that doctrine, her entire theory, and hence her entire case, fails.

Accordingly, the judgment of the trial court will be reversed, the jury verdict set aside, and final judgment entered here in favor of Nelson.

*Reversed and final judgment.*